**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

**CRAIG TURPIN**,

                    Plaintiff,

      **v.**

**SILVER NEWS, INC.**,
a Colorado corporation, d/b/a "Aspen Daily News,"

**DAVID COOK**,

and

**SPENCER MCKNIGHT**,

                  Defendants.

---

## COMPLAINT AND JURY DEMAND

---

The Plaintiff, Craig Turpin ("Turpin"), by and through the undersigned counsel from the Sawaya & Miller Law Firm, as his Complaint and Jury Demand against Silver News, Inc., doing business as "Aspen Daily News" ("ADN"), David Cook ("Cook"), and Spencer McKnight ("McKnight") (collectively, "Defendants"), states as follows:

## NATURE OF ACTION

1.      Turpin alleges that the Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), and Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 et *seq*., the Colorado Minimum Wages of

Workers Act, C.R.S. § 8-6-101 *et seq.*, the applicable Colorado Minimum Wage Orders, 7 C.C.R. 1103-1 (2017-2019), and the Colorado Overtime and Minimum Pay Standards Order, 7 C.C.R. 1103-1 (2020) (collectively, "Colorado Wage and Hour Law"), by failing to pay him minimum wages and overtime compensation during his employment.

2.      Under the FLSA and the Colorado Wage Act (as amended effective January 1, 2020), ADN *and* the individual defendants, Cook and McKnight ("Individual Defendants"), were Turpin's "employers" because all three: (1) had the power to hire and fire employees; (2) determined Turpin's rate of pay and method of payment; (3) supervised and controlled the conditions of Turpin's employment; and (4) exercised a high level of operational control. *See Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1189–90 (D. Colo. 2012) (discussing "economic reality test" used to establish whether individual is an "employer" under the FLSA); C.R.S. § 8-4-101(6) ("'Employer' has the same meaning as set forth in the federal 'Fair Labor Standards Act'").

3.      Turpin was employed by the Defendants as the chief photographer for the Aspen Daily News from March 1, 2017 to May 11, 2020. Throughout his employment, Turpin worked approximately 48 to 50 hours per week. Nevertheless, the Defendants did not pay him overtime compensation of one and one-half times his regular rate of pay for the hours he worked in excess of 40 per week. As such, ADN is liable for violating the overtime requirements of the FLSA and Colorado Wage and Hour Law from October 9, 2017 to December 31, 2019, the Individual Defendants are liable for violating the FLSA

from October 9, 2019 to December 31, 2019, and all three Defendants are liable for violating the FLSA and Colorado Wage and Hour Law from January 1, 2020 to May 11, 2020. *See* 29 U.S.C. § 207; 7 C.C.R. 1103-1, Rule 4.

4.     Turpin alleges that the Defendants' violations of the FLSA and Colorado Wage and Hour Law were willful.

5.     Turpin was constructively discharged on May 11, 2020 after he refused to participate in an illegal scheme the Defendants had forced upon their employees wherein the Defendants instructed employees: (A) to continue working for ADN full time in exchange for wage payments that were below the federal and Colorado minimum wages; (B) to file claims for unemployment benefits with the Colorado Department of Labor and Employment ("CDLE"); (C) to falsely represent to the CDLE that they had worked "zero hours" for ADN; and (D) to falsely represent to the CDLE that wages from the Defendants were 1099 non-wage income. The employees were threatened that they would lose their jobs and would not be rehired if they did not submit to the scheme.

6.     The Defendants' scheme violated the minimum wage requirements of the FLSA and Colorado Wage and Hour Law because it resulted in Turpin receiving a wage rate that was below the federal and Colorado minimum wages. *See* 29 U.S.C. § 206 (setting federal minimum wage at $7.25 per hour); Colo. Const. Art. XVIII, § 15 (setting Colorado minimum wage at $12.00 per hour); 7 C.C.R. 1103-1, Rule 3 (same).

7.     The Defendants' scheme also violated the public policies enunciated in the

Colorado Employment Security Act, C.R.S. § 8-7-101 *et seq.*, because it required the Defendants and their employees to misrepresent their employment with ADN to the CDLE in order to obtain unemployment benefits. *See* C.R.S. § 8-81-101.

8.      By seeking to force Turpin to participate in fraudulent conduct toward the CDLE, ADN constructively discharged Turpin's employment in violation of Colorado public policy.

9.      Turpin seeks back wages, overtime compensation, front pay, liquidated damages, statutory damages, compensatory damages, exemplary damages, reasonable attorney's fees, and the costs of litigation for the Defendant's violations of the FLSA and Colorado Wage and Hour Law and the wrongful termination of his employment.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over Turpin's FLSA claims because those claims arise under the laws of the United States. 28 U.S.C. § 1331; 29 U.S.C. § 201 *et seq.*

11.     The Court may exercise supplemental jurisdiction over Turpin's Colorado Wage and Hour Law claims and his Colorado common law claims because those claims form part of the same case or controversy as his FLSA claims under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

12.     Venue is proper in this Court because a substantial part of the events or omissions giving rise to Turpin's claims occurred in this District. 28 U.S.C. 1391(b)(2).

## PARTIES

13.     Plaintiff Craig Turpin is a resident of Colorado who was employed by the Defendants from March 1, 2017 to May 11, 2020. His counsel, the Sawaya & Miller Law Firm, are located at 1600 Ogden Street, Denver, Colorado 80218.

14.     Defendant Silver News, Inc., which does business as "Aspen Daily News," is a Colorado corporation that has its principal office at 625 E. Main Street, Aspen, Colorado 81611.

15.     Defendants David Cook and Spencer McKnight are residents of Colorado who can be found at 625 E. Main Street, Aspen, Colorado 81611. The Individual Defendants are the owners and managers of ADN, who exercised operational control over the company at all times relevant to this Complaint.

## FACTUAL ALLEGATIONS

16.     Turpin incorporates the allegations in the paragraphs above as if fully set forth herein.

17.     The Defendants own and operate the "Aspen Daily News," a local newspaper in Aspen, Colorado.

18.     The Defendants and their employees are engaged in interstate commerce: their publications and the equipment they use travel across state lines.

19.     On information and belief, the Defendants did business of $500,000.00 or more each year in 2017, 2018, 2019, and 2020.

20.     Turpin was hired by the Defendants to work as the chief photographer at the Aspen Daily News on March 1, 2017. Prior to that date, Turpin had submitted photographs and performed other work for the paper since 2015.

21.     During the period from October 9, 2017 to May 11, 2020 ("Relevant Period"), Turpin generally worked six days per week for the Defendants.

22.     Turpin worked approximately 48 to 50 hours per week for the Defendants throughout the Relevant Period.

23.     At all times during the Relevant Period, until March 2020 – when the Defendants initiated their scheme to defraud the government in order to subsidize a cheap workforce – the Defendants paid Turpin $45,000.00, or $22.50 per hour.

24.     The Defendants did not pay Turpin overtime compensation at a rate of one and one-half times his regular rate for the hours he worked over 40 per week at any time during the Relevant Period.

25.     At all times during the Relevant Period, the Individual Defendants had the power to hire and fire ADN employees.

26.     At all times during the Relevant Period, the Individual Defendants determined the rate of pay for Turpin and his coworkers.

27.     At all times during the Relevant Period, the Individual Defendants determined the method of payment for Turpin and his coworkers.

28.     At all times during the Relevant Period, the Individual Defendants managed

the day-to-day production of the paper.

29.     Throughout the Relevant Period, the Individual Defendants gave work assignments to Turpin and his coworkers, and reprimanded the employees if/when assignments were not performed in accordance with their expectations.

30.     At all times during the Relevant Period, the Individual Defendants exercised ultimate control over the paper and its employees.

31.     In March 2020, the outbreak of the COVID-19 pandemic caused widespread economic hardship and unemployment in Colorado.

32.     On March 26, 2020, the Defendants held a meeting with their employees in which Cook announced that:

     a.   The paper was implementing a "furlough" of all of its employees;

     b.   The employees should file for unemployment benefits with the CDLE;

     c.   In filing for benefits, the employees should indicate to the CDLE that they had worked "zero" hours for ADN during each week;

     d.   The employees should continue to work their regular, full-time hours;

     e.   In exchange for their work, the Defendants would pay the employees an amount equal to 25% of the unemployment benefits they received from the CDLE each week;

     f.   The employees should report the amounts paid to them by the Defendants to the CDLE as "1099 income;" and

g.  Because there were likely to be 20 million people applying for unemployment during the next week, "the chances of anyone getting audited [were] pretty low."

33.  Cook told the employees that if they did not continue to work for ADN under this scheme, their employment would be terminated and they would not be offered their jobs back when the paper resumed normal operations.

34.  An employee at the March 26, 2020 meeting asked Cook if the scheme he had outlined was "illegal." Cook responded that the Individual Defendants had consulted with a lawyer and assured the employees that the scheme was "certainly not illegal."

35.  The federal minimum wage was $7.25 per hour in 2020.

36.  The Colorado minimum wage was $12.00 per hour in 2020.

37.  From March 30, 2020 to May 11, 2020, the Defendants paid Turpin wages that were below the federal and Colorado minimum wage rates.

38.  For example, Turpin worked approximately 50 hours for the Defendants during each of the weeks in April 2020. However, the Defendants paid Turpin $274 per week – approximately $5.48 per hour – for the hours he worked during April 2020.

39.  As a result of the Defendant's scheme, the Defendant's stopped paying for Turpin's health insurance, despite the fact that he was still a full-time employee.

40.  The Defendant's scheme created work conditions for Turpin that were intolerable: he was being forced to work for wages and compensation that were well below

legally-mandated minimum wage rates, and he was being asked to participate in fraud so that the Defendants could subsidize their workforce with state and federal money.

41.    On May 11, 2020, Turpin submitted a letter to the Defendants informing them that he could not work under the scheme presented by Cook at the meeting.

42.    The Defendants received Turpin's letter, but did not offer to keep Turpin employed at his previously-agreed rate of pay or to rescind their request that ADN's employees engage in fraud toward the State of Colorado to remain employed at ADN.

43.    The Defendants did not pay Turpin for 18 vacation days that were due to him upon his termination. Nor did they reimburse Turpin for more than $800.00 in expenses that he had incurred and invoiced to the company.

44.    On June 22, 2020, Turpin sent the Defendants a letter through counsel demanding immediate payment of the minimum wages, health benefits, overtime compensation, vacation pay, expense reimbursements, and other wages that were due to him. Turpin's counsel copied the letter to two ADN investors: Ernie Frywald and Craig Morris.

45.    The Defendants received Turpin's letter, but did not remit any money to Turpin in response to the letter.

46.    On July 7, 2020, Ernie Frywald sent an e-mail to Turpin's counsel in which he disclaimed any knowledge of ADN's operations and stated, "David Cook runs the Aspen Daily News along with Spencer McKnight and they make all staffing and

operational decisions."

47.     Subsequently, the Plaintiff's counsel informed the Defendants' counsel of the Plaintiff's intention to file this Complaint.

48.     On October 6, 2020, the Plaintiff was contacted by an ADN employee who stated that she had spoken to the Defendants, and that the Defendants wished to speak to the Plaintiff without his attorneys present.

49.     The Defendants had instructed the employee to warn the Plaintiff that filing this Complaint would "ruin" the Plaintiff and that he should therefore talk to Cook and McKnight to "settle this" instead of proceeding with this action.

50.     At all times during the Relevant Period, the Defendants were advised by attorneys and thus, they should have been aware of the minimum wage and overtime requirements of the FLSA and Colorado Wage and Hour Law, but failed to abide by those requirements.

51.     The Defendants also should have been aware that the Fair Labor Standards Act and Colorado Wage and Hour Law prohibit employers from engaging in coercion, threats, and other retaliation against an employee who has made wage complaints.

52.     Because the Defendants were aware, or should have been aware of the law and nevertheless failed to pay the Plaintiff appropriately and threatened to "ruin" the Plaintiff for filing this Complaint, the Defendant's violations were willful, reckless, willful and wanton.

## COUNT I

**FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF
THE FAIR LABOR STANDARDS ACT**

**29 U.S.C. § 201 *et seq.***

53.     Turpin incorporates the allegations in the paragraphs above as if fully set forth herein.

54.     At all times during the Relevant Period, ADN was an "employer" and an "enterprise engaged in commerce" under 29 U.S.C. § 203(d) and 29 U.S.C. § 203(s) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

55.     At all times during the Relevant Period, the Individual Defendants were also "employers" subject to the FLSA.

56.     At all times during the Relevant Period, Turpin was an "employee" of the Defendants within the meaning of 29 U.S.C. § 203(e)(1).

57.     Under the FLSA, the Defendants were required to pay Turpin the federal minimum wage of $7.25 per hour for all of the hours that he worked. 29 U.S.C. § 206.

58.     The Defendants violated the FLSA by failing to pay Turpin $7.25 per hour for all of the hours he worked from March 30, 2020 to May 11, 2020.

59.     The Defendants were aware, or should have been aware, of the minimum wage requirements of the FLSA and thus, their violations were willful.

60.     Based on the Defendants' violations of the FLSA, Turpin is entitled to unpaid minimum wages, liquidated damages, reasonable attorney's fees, and the costs of this

litigation. *See* 29 U.S.C. § 216(b).

## COUNT II

**FAILURE TO OVERTIME COMPENSATION IN VIOLATION OF
THE FAIR LABOR STANDARDS ACT**

**29 U.S.C. § 201 et seq.**

61.     Turpin incorporates the allegations in the paragraphs above as if fully set forth herein.

62.     Under the FLSA, the Defendants were required to pay Turpin overtime compensation at a rate of one and one-half times his regular rate of pay for all of the hours he worked over 40 in any given workweek.

63.     Throughout the Relevant Period, Turpin worked 48-50 hours per week.

64.     The Defendants did not pay Turpin overtime compensation at a rate of one and one-half times his regular rate of pay at any time during the Relevant Period.

65.     The Defendants were aware, or should have been aware, of the overtime requirements of the FLSA and thus, their violations were willful.

66.     Based on the Defendants' violations of the FLSA, Turpin is entitled to unpaid overtime compensation, liquidated damages, reasonable attorney's fees, and the costs of this litigation. *See* 29 U.S.C. § 216(b).

## COUNT III

### FAILURE TO PAY MINIMUM WAGES IN VIOLATION OF COLORADO WAGE AND HOUR LAW

**Colo. Const. Art. XVIII § 15**
**C.R.S. § 8-4-101 *et seq.***
**C.R.S. § 8-6-101 *et seq.***
**7 C.C.R. 1103-1 (2019)**
**7 C.C.R. 1103-1 (2020)**

67.    Turpin incorporates the allegations in the paragraphs above as if fully set forth herein.

68.    At all times from January 1, 2020 to May 11, 2020, the Defendants were Turpin's "employers" as defined by Colorado Wage and Hour Law. C.R.S. § 8-4-101(6).

69.    At all times during the Relevant Period, Turpin was an "employee" subject to the protections of the FLSA and Colorado Wage and Hour Law. Colo. Const. Art. XVIII, § 15; C.R.S. § 8-4-101(5).

70.    Article XVII, Section 15 of the Colorado Constitution requires employers to pay the Colorado minimum wage rates to "employees who receive the state or federal minimum wage."

71.    Under Colorado Wage and Hour Law, the Defendants were required to pay Turpin minimum wages of $12.00 per hour for the hours worked in 2020. Colo. Const. Art. XVIII, § 15; 7 C.C.R. 1103-1 (2017); 7 C.C.R. 1103-1 (2018); 7 C.C.R. 1103-1 (2019); 7 C.C.R. 1103-1 (2020).

72.    The Defendants violated the minimum wage requirements of Colorado Wage

and Hour Law by paying Turpin less than $12.00 per hour for the hours he worked from March 30, 2020 to May 11, 2020.

73.     The Defendants were aware, or should have been aware, of the minimum wage requirements of Colorado Wage and Hour Law but failed to pay Turpin Colorado minimum wages. Their violations are therefore willful.

74.     Because of the Defendants' violations of Colorado Wage and Hour Law, Turpin is entitled to unpaid minimum wages, statutory damages, reasonable attorney's fees and costs. *See* C.R.S. § 8-4-109(3); C.R.S. § 8-4-110.

**COUNT IV**

**FAILURE TO PAY WAGES AND COMPENSATION IN VIOLATION OF COLORADO WAGE AND HOUR LAW**

**Colo. Const. Art. XVIII § 15**
**C.R.S. § 8-4-101 et seq.**
**C.R.S. § 8-6-101 et seq.**
**7 C.C.R. 1103-1 (2019)**
**7 C.C.R. 1103-1 (2020)**

75.     Turpin incorporates the allegations in the paragraphs above as if fully set forth herein.

76.     Colorado Wage and Hour Law requires employers to make timely payments of all wages and compensation due to employees. C.R.S. § 8-4-103.

77.     Upon termination, all wages and compensation due to an employee must be paid immediately. C.R.S. § 8-4-109.

78.     The Defendants violated Colorado Wage and Hour Law by failing to pay

14

Turpin his agreed-upon wages, benefits, and vacation pay.

79.     Turpin sent the Defendants a demand for payment on June 22, 2020, but the Defendants failed to remit any payment to Turpin in response to the demand.

80.     Accordingly, the Defendants are liable to Turpin for unpaid wages, benefits, vacation pay, and statutory damages under C.R.S. § 8-4-109(3)(b).

81.     Additionally, because the Defendants knew or should have known that their actions violated Colorado Wage and Hour Law, their violations were "willful," and the Defendants are therefore liable for penalties under C.R.S. § 8-4-109(3)(c).

82.     The Defendants are also liable for reasonable attorney's fees and costs under C.R.S. § 8-4-110.

## COUNT V

### FAILURE TO PAY OVERTIME COMPENSATION IN VIOLATION OF COLORADO WAGE AND HOUR LAW

**7 C.C.R. 1103-1 (2019)**
**7   C.C.R. 1103-1 (2020)**

83.     Turpin incorporates the allegations in the paragraphs above as if fully set forth herein.

84.     Under Colorado Wage and Hour Law, Turpin was entitled to overtime compensation of one and one-half times his regular rate of pay for all of the hours he worked over 40 per week during the Relevant Period. *See* 7 C.C.R. 1103-1:4; 7 C.C.R. 1103-1, Rule 4.

85.    Throughout the Relevant Period, Turpin worked 48-50 hours per week.

86.    The Defendants did not pay Turpin overtime compensation at a rate of one and one-half times his regular rate of pay at any time during the Relevant Period. As such, the Defendants violated Colorado Wage and Hour Law.

87.    The Defendants were aware, or should have been aware, of the minimum wage requirements of Colorado Wage and Hour Law and thus, their violations were willful.

88.    ADN is liable to Turpin for overtime compensation, statutory damages, statutory penalties, attorney's fees and costs for the Defendants' failure to pay overtime compensation from October 9, 2017 to December 31, 2019.

89.    All three Defendants are liable to Turpin for overtime compensation, statutory damages, statutory penalties, attorney's fees and costs for the Defendants' failure to pay overtime compensation from January 1, 2020 to May 11, 2020.

## COUNT VI

### CONSTRUCTIVE DISCHARGE IN VIOLATION OF
### COLORADO PUBLIC POLICY

### *Against ADN*

90.    Turpin incorporates the allegations in the paragraphs above as if fully set forth herein.

91.    In March 2020, the Defendants directed Turpin and his coworkers to participate in a scheme whereby they would (1) work for wages that were below the federal and Colorado minimum wages and (2) misrepresent their employment to the CDLE. The

scheme was and is illegal.

92.     Turpin correctly believed that the actions directed by the Defendants would violate the FLSA, Colorado Wage and Hour Law, and the Colorado Employment Security Act. *See* 29 U.S.C. § 206; C.R.S. § 8-6-102; C.R.S. § 8-81-101.

93.     The Defendant's conduct made Turpin's working conditions intolerable: Turpin was being forced to work for less than minimum wages, and he was being asked to participate in fraud. The Defendants threatened Turpin that they would terminate his employment and not re-hire him if he did not participate in their scheme. Thus, the Defendants constructively terminated Turpin.

94.     The Defendants were aware, or reasonably should have been aware, that Turpin's refusal to comply with their directions was based on Turpin's reasonable belief that the actions ordered by the Defendants were illegal.

95.     Because the Defendants constructively discharged Turpin for refusing to commit illegal acts, ADN is liable for wrongful termination in violation of public policy and is therefore liable to Turpin for back pay, front pay, compensatory damages, and exemplary damages.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully asks the Court to enter judgement in his favor and against the Defendants, and to:

A. Enter a declaratory judgment condemning the Defendants' willful violations of

the FLSA and Colorado Wage and Hour Law;

B. Award the Plaintiff:

    1.  Colorado minimum wages for the hours he worked for the Defendants from March 30, 2020 to May 11, 2020;

    2.  Overtime compensation for the hours he worked for the Defendants in excess of 40 per week during the Relevant Period;

    3.  Liquidated damages under 29 U.S.C. § 216(b) in an amount equal to the federal minimum wages and overtime compensation awarded;

    4.  All wages, benefits, vacation pay, and other compensation owed to him under Colorado Wage and Hour Law;

    5.  Statutory damages under C.R.S. § 8-4-109(3)(b) for the Defendant's violations of Colorado Wage and Hour Law

    6.  Statutory penalties for willful violations of Colorado Wage and Hour Law under C.R.S. § 8-4-109(3)(c);

    7.  Reasonable attorney's fees and costs; and

C. Award all other and further relief that the Court finds to be equitable and just.

## **<u>JURY DEMAND</u>**

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 12th day of October, 2020.

/s/ Adam M. Harrison

_____

David H. Miller (8405)
Adam M. Harrison (50553)
Sawaya & Miller Law Firm
1600 Ogden Street
Denver, Colorado 80218
720.527.4369
aharrison@sawayalaw.com

*Attorneys for the Plaintiff*